IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 3:05cr46-F |
| | ) | (WO) |
| JERRY SCOTT MINOR | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

The defendant, Jerry Scott Minor ("Minor"), was indicted on June 29, 2005, and charged with knowingly and intentionally manufacturing 50 or more grams of a mixture containing methamphetamine in violation of 21 U.S.C. § 922(g)(1); using and carrying a firearm in relation to and possessing a firearm in furtherance of a drug trafficking offense in violation on 18 U.S.C. § 924(c)(1)(A); and knowingly using and carrying a destructive device in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(B)(ii) and 921(a)(4)(A).[1] On September 27, 2005, the defendant filed a motion for leave to file out of time a motion to suppress.  (Doc. # 31).  The court heard oral argument on the motion, and on October 3, 2005, granted the defendant's motion to file a motion to suppress out of time. (Doc. # 33).

As originally set forth in his motion to suppress, Minor asserts that a search of his property on January 4, 2005, pursuant to a warrant was in violation of the Fourth Amendment to the United States Constitution.  Minor contends that the search of his residence at 6 Lee

---

[1]  The defendant is charged with knowingly using and carrying approximately thirty (30) sticks of explosives with blasting cap attached.  (Indictment, Count 3).

Road 325, Smiths, Alabama, on January 4, 2005, was a general search, an improper search of the curtilage of his property, and was without permission or probable cause.  (Mot. to Suppress at 6).  On October 11, 2005, the Court held an evidentiary hearing on the motion to suppress.  At the hearing, the defendant clarified the basis of his motion, explaining that he was challenging only the validity of a protective sweep search conducted by officers who had entered his property to execute arrest warrants.  Minor argues that the scope of the protective sweep was too broad; consequently, a search warrant based on evidence obtained during the sweep was violative of his Fourth Amendment rights.  Based on the evidence presented during the suppression hearing, the court concludes that the motion to suppress is due to be denied.

## FACTS

For over a year prior to January 4, 2005, Investigator Donnie Surrett of the Lee County Sheriff's Department had conducted surveillance on Minor's residence located at 6 Lee Road 325, Smiths, Alabama,[2] at least ten to fifteen times.  On Minor's property was a storage trailer, a residential trailer and a small barn. On January 4, 2005, Surrett and other officers went to the property to serve arrest warrants on Daniel Mroz, Lucinda Harrison, and Jerry Scott Minor.[3]  It is undisputed that the officers had valid arrest warrants for these three

---

[2]  On January 18, 2004, Agent Clint Davis of the Alabama State Department of Agriculture, who was investigating the theft of heavy equipment, informed Surrett that he had received information that Minor may be involved in the manufacture of methamphetamine.

[3]Surrett had information that Mroz and Harrison lived with Minor.

2

individuals.  Prior to executing the arrest warrants, surveillance by other officers revealed that Minor, Harrison and another white male were on the property.

At some point during this surveillance, officers were fired upon by a person later identified as Wesley Meadows Jr.   Meadows subsequently left the property and officers conducted a traffic stop.  Once the officers learned his identity, Meadows was released, and he returned to Minor's residence.

By the time Meadows returned, Minor had mounted a jet ski and was cruising in the nearby river.  After Meadows' return, the officers saw people moving around and recognized Mroz.  Concerned that he and the others may try to leave, officers climbed the gate to the property and arrested Mroz in the drive-way several hundred feet in front of and away from Minor's residential trailer.   A search of Mroz, incident to his arrest, uncovered methamphetamine and drug paraphernalia on his person.

Minor, still riding the jet ski, watched Mroz's arrest.  Harrison, meanwhile, fled into the woods.  Surrett went around the residential trailer and passed by the back of the barn.  As he passed the barn, he saw a propane tank with a cylinder discolored with a blueish tint.  The discolored cylinder indicated to Surrett that the propane tank was used to store chemicals necessary for the manufacture of methamphetamine.  Surrett had also seen a plastic bag containing powder residue near the front porch of Minor's trailer.  Officers subsequently confirmed the presence of methamphetamine in the bag.

Believing he had probable cause based on this information, Surrett applied for a

3

telephonic search warrant to search those areas he considered to be the residence of Jerry Scott Minor, specifically the storage trailer, residential trailer, barn and three parked vehicles.[4] The search uncovered ephedrine, hydrogen peroxide, dynamite, and blasting caps as well as ammonia in the propane tank.

## DISCUSSION

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.[5]   The amendment's primary purpose is to protect citizens from unwarranted governmental intrusion and to prevent abusive police power.  *See Johnson v. United States*, 333 U.S. 10, 13 (1948); *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980) (plurality opinion).

As noted above, the defendant does not challenge the officers' initial entry onto his property.[6]  Once on the property,

---

[4]  Although there were two other trailers on property, the officers did not search these trailers because the officers believed that other family members lived in those trailers.

[5]  The entire text of the Amendment provides:

[T]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[6]Surrett testified that after Meadows returned to Minor's property, everyone began to move around in such a way that the officers became concerned they would leave.  Thus, it appears that the entry into Minor's property was justified by the need to act quickly to prevent the escape of the persons for whom officers had warrants.  Moreover, the arrest warrants were sufficient to authorize entry onto the property to arrest persons officers reasonably believed lived there.  *See Payton v. New*

(continued...)

> the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in . . . spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Maryland v. Buie,* 494 U.S. 325, 334 (1990).

The defendant argues that, based on the concept of curtilage, the officers were not entitled to search beyond the "common roadway servicing the multiple residences at that general location." (Out of Time Mot. to Suppress at 7). At the hearing, the crux of the defendant's argument was that the officers "searched" too close to the porch (where the bag of methamphetamine was found) and should not have looked behind the barn (where the propane tank was observed). This argument misses the mark.

When he and the other officers entered the property, Surrett knew Harrison had fled into nearby woods and did not know where Meadows was on the property. Given these circumstances coupled with the fact that Meadows had earlier fired a weapon at officers, Surrett and the other officers were fully justified in conducting a protective sweep of the area. It was reasonable for the officers to search behind the barn and by the front porch of the residential trailer because persons could have been hiding in either location.

The Fourth Amendment permits a properly limited protective sweep in

---

[6](…continued)

*York*, 445 U.S. 573 (1980). Even though officers knew Minor was on a jet ski in the river, Minor presented no evidence to show that officers did not need to enter his property to execute the arrest warrant.

conjunction with an in-house arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Tobin v. United States*, 923 F.2d 1506,1513 (11th Cir. 1991) (*en banc*) *quoting Buie, supra*.

The defendant argues that *Buie* is inapplicable because *Buie* applies to searches within a home, and the protective sweep in this case occurred outside and around Minor's residence. While it is true that *Buie* involved a protective sweep within a house, the basic premise that officers may conduct protective sweeps to ensure their safety is equally applicable to the circumstances in this case. The officers were in an isolated, wooded area. There were numerous places where persons could hide. At least one officer had information that Minor may have booby-trapped his property.

Police lawfully arresting a suspect may conduct a protective sweep of the area if they reasonably believe that delaying the search would cause the officers to risk their lives or the lives of others. *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 1098-99, 108 L.Ed.2d 276 (1990). A protective sweep may not be a full search of the premises, "but may extend only to a cursory inspection of those spaces where a person may be found." *Id.* at 1099. Any evidence found during such a cursory inspection may be admissible. *United States v. Delgado,* 903 F.2d 1495, 1502 (11th Cir. 1990).

*United States v. Beale*, 921 F.2d 1412, 1432 (11th Cir. 1991). There is nothing in *Buie* which is contrary to extending it to areas outside the home of a person for whom police have an arrest warrant. Indeed, Minor's expectation of privacy regarding these areas is surely not entitled to the same degree of protection as the interior of his home. *See e.g., United States v. Santana*, 427 U.S. 38 (1976) (Doorway of a home is a "public place"). Based on the totality of the circumstances, the court concludes that the protective sweep in this case was

6

supported by reasonable, articulable facts that the area surrounding Minor's residence may have harbored dangerous individuals.

Once the officers conducted the protective sweep, they were "free to seize any evidence they discovered in plain view within the proper scope of the protective sweep." *United States v. Hromada*, 49 F.3d 685, 691 (11th Cir. 1995).

> Just because a police officer is *glad* to have the opportunity to see that which is apparent at the scene of a valid arrest – when it is his *duty* to make the arrest – does not make his seeing these things invalid. Just because the officers were *glad* that they could capitalize on the opportunity by incidentally seeing what was in plain view is of no moment.

*Id*. at 691. *See also Tobin*, 923 F.2d at 1513 ("The agents were, of course, free to seize any evidence they discovered in plain view within the proper scope of the protective sweep.")

## CONCLUSION

For the reasons stated, the court finds that the defendant's rights secured by the Fourth Amendment were not violated by the protective sweep which led to evidence supporting the issuance of a search warrant. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be denied. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **October 29, 2005**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not

appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 18th day of October, 2005.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE